## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTINA VENCES, individually and on behalf of all others similarly situated, | ) ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| WATERWIPES (USA), INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Christina Vences ("Plaintiff"), individually and on behalf of all others similarly situated ("Class")[1], by and through her attorneys, brings this class action complaint against Defendant WaterWipes (USA), Inc. ("Defendant" or "WaterWipes") and alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This is a class action lawsuit regarding Defendant's manufacturing, distribution, advertising, marketing, labeling, and sale of "WaterWipes" brand wipes ("Products" or "Wipes")[2] that are sold nationwide and marketed as, among other things, "100% Biodegradable Wipes,"

---

[1] The precise definition of the "Class" and any subclasses are defined below. Unless otherwise stated, the class of purchasers that Plaintiff seeks to represent will be referred to herein as the "Class."

[2] The Products refer to the following WaterWipes brand wipes: WaterWipes Biodegradable Original Baby Wipes, WaterWipes Biodegradable Textured Clean Baby Wipes, and WaterWipes Adult Care Sensitive Wipes. Plaintiff reserves the right to amend the complete list of Products subject to this lawsuit based on facts obtained in discovery or further investigation.

along with the image of a green leaf.[3] Additionally, since on or around March or April 2022, Defendant further misled consumers by claiming on the back of the Product package that the Water Wipes are "Made from 100% plant fibres, biodegrades in 4 weeks." Defendant's labeling representations concerning the Biodegradability of the Products will be referred to herein as the "Representations."

2. Unfortunately for all reasonable consumers, including Plaintiff, Defendant's Representations are false and misleading.

3. Far from being "100% Biodegradable Wipes," the Products will not completely decompose within a reasonable time period after customary disposal. This is because the Products are customarily thrown in the trash, which means the Wipes end up in landfills or incinerators. These places do not have the conditions necessary to allow the Wipes to decompose completely within a reasonable time period.

4. Defendant makes these Representations directly on the Products' front labeling in a bright-green font that contrasts the rest of the labels' blue color scheme[4]:

---

[3] All the Products contain nearly identical, substantially similar representations appearing on the Products' front labeling. *See* https://www.waterwipes.com/us/en/products/baby-care-products. As such, all reasonable consumers who purchased the Products were deceived and paid a price premium because of Defendant's uniform Representations made across all the Products' packaging.

[4] https://www.waterwipes.com/us/en/products/baby-care-products/baby-wipes



5.     Moreover, Defendant omits from the Products' labeling or anywhere in the Products' marketing and advertising that the Products despite labeling the Products as "100% Biodegradable Wipes." ("Omissions"). This lack of information deceives reasonable consumers, especially because the Products specifically instruct consumers **not to** flush the Wipes down the toilet. The image below is a zoomed-in image of the Products' front label, which includes a human throwing the Product in the toilet, which is expressly crossed out. This leads all reasonable consumers, including Plaintiff, to conclude that the Wipes should not be disposed of in toilets, but instead in the consumers' waste basket after using the Wipes.



6.      As such, the Wipes are non-flushable and are, therefore, customarily disposed of in landfills and/or incinerators.

7.      This information is material to Plaintiff and all reasonable consumers when purchasing Defendant's Products.

8.      Defendant makes the Representations and Omissions to increase profits and market share in the consumer wipes industry. Indeed, consumers, including Plaintiff, place value on "biodegradable" or "green" products, like Defendant's Products.

9.      It's no secret that the United States has a huge waste problem. The majority of waste (62%) discarded by homes and businesses in the U.S. is ultimately dumped into landfills or burned in incinerators.[5]

10.     As consumers become increasingly aware of the problems associated with waste, they are increasingly susceptible to marketing claims reassuring them that certain products are biodegradable and, overall, better for the environment. Many consumers concerned with the proliferation of waste actively seek to purchase products that are biodegradable to divert such waste from the ocean and landfills. Seeking to take advantage of consumers' concerns, Defendant's market and sell the Products as "100% Biodegradable," when the Products are not.

11.     Companies such as Defendant have capitalized on consumers' desire for purportedly "biodegradable" products. Indeed, consumers are willing to pay and have paid a premium for such products.

12.     A February 2021 survey of roughly 1,000 U.S. consumers found that 77% of Americans are concerned about the environmental impact of the products they buy.[6]

---

[5] https://environmentamerica.org/center/resources/trash-in-america-2/
[6]  https://www.businesswire.com/news/home/20210322005061/en/GreenPrint-Survey-Finds-Consumers-Want-to-Buy-Eco-Friendly-Products-but-Don%E2%80%99t-Know-How-to-Identify-Them

13.     A December 2021 survey of 1,200 U.S. consumers found 75-to-80 percent willing to pay higher prices for sustainable items across household product categories.[7]

14.     Clearly, reasonable consumers, including Plaintiff and Class members, value biodegradable products for important reasons, including the belief that they are safer and better for the environment.

15.     Before placing the Products into the stream of commerce and into the hands of consumers, Defendant knew or should have known that the Products were not biodegradable, but Defendant, through the Representations and Omissions, misrepresented, omitted, and concealed this material fact to all reasonable consumers, including Plaintiff and Class members, on the Products' labeling and marketing.

16.     Plaintiff and Class members reasonably relied on Defendant's Representations and Omissions when purchasing the Products.

17.     Plaintiff and Class members purchased the Products and paid a price premium[8] based on Defendant's Representations and Omissions.

18.     Because Defendant's false and misleading Representations and deceptive and unfair material Omissions dupe reasonable consumers into believing the Products feature premium attributes (are "100% Biodegradable"), Defendant's Representations and Omissions thus dupe reasonable consumers into paying premium prices for the Products, even though they do not

---

[7]https://www.businesswire.com/news/home/20211201005167/en/Capterra-research-finds-53-of-consumers-are-influenced-by-a-company%E2%80%99s-sustainability-actions-when-purchasing-products.

[8] A damages expert will conduct a price premium damages analysis at the appropriate time after discovery. However, at least one study of 1,510 U.S. consumers found that, on average, consumers are willing to pay 10.3% more for food (i.e. strawberries) grown on biodegradable mulches. *See* https://www.sciencedirect.com/science/article/abs/pii/S0963996918306197. Plaintiff provides this study as only an example of the price premium consumers will pay for "biodegradable" products, like Defendant's Products.

actually feature the premium attributes for which the consumers, including Plaintiff and Class members, pay.

19.     Defendant is therefore liable to Plaintiff and Class members for selling the Products that will not completely decompose within a reasonable time period after customary disposal and will instead end up in landfills or incinerators despite labeling the Products as "100% Biodegradable Wipes."

20.     Defendant also clearly recognized or regretted its misrepresentations because the current front labeling of the Products no longer carries the "100% Biodegradable" symbol, and the back label of the Products says explicitly that the company is "working hard on making our wipes and packaging biodegradable."

21.     The recent change in marketing and language included on the Products' labeling is a clear admission and acknowledgment by Defendant that the previous statements were, in fact, false and misleading.

22.     This lawsuit seeks to recover monetary damages on behalf of Plaintiff and Class members who purchased Defendant's mislabeled Products.

**PARTIES**

23.     Plaintiff Christina Vences is a resident and citizen of Illinois who resides in Hanover Park, Illinois. Plaintiff Vences has purchased numerous Products, including WaterWipes Biodegradable Original Baby Wipes, multiple times in the State of Illinois during any relevant statutory period. Most recently, Plaintiff purchased the Product on December 4, 2022, at Target in Schaumburg, Illinois and paid $7.98 for two packages of the Products.

6

24.     Plaintiff and reasonable consumers believe that products labeled as "100% Biodegradable" will completely decompose within a reasonable period after customary disposal and will not end up in landfills or incinerators.

25.     When purchasing the Products, Plaintiff Vences read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Products were adequately manufactured, labeled, free from defects, and that the Representations were true. Plaintiff Vences read and relied on Defendant's Representations and Omissions when deciding to purchase the Products, and these Representations and Omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, deceptive, and unfair Representations and Omissions alleged herein regarding the Products, Plaintiff Vences would not have been willing to purchase the Products. Plaintiff Vences paid a price premium for the Products based on Defendant's Representations and material Omissions. Accordingly, Plaintiff Vences was injured and lost money because of Defendant's mislabeling and deceptive and/or unfair conduct.

26.     Defendant WaterWipes (USA), Inc. ("Defendant") is a multinational corporation organized and existing under the laws of the State of North Carolina that has its principal place of business in Portsmouth, New Hampshire.

27.     Defendant sells the Products throughout the United States, including Illinois. The Products, including those purchased by Plaintiff and Class members, are available at various retail stores throughout the United States, including Illinois. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of the Products to consumers nationwide, including in Illinois.

## JURISDICTION AND VENUE

28.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendants, and (4) there are more than 100 Class members.

29.     This Court has personal jurisdiction over Defendant because the claims asserted in this Complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within Illinois related to the allegations made herein, and caused injuries to Plaintiff and putative Class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period. At that time, Defendant was engaged in business activities in Illinois.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Products in this District. Venue is also proper because Plaintiff Vences resides in this District.

## COMMON FACTUAL ALLEGATIONS

**I.     Defendant's Representations and Omissions are False, Misleading, and Deceptive to Reasonable Consumers.**

31.     Defendant formulates, manufactures, markets, advertises, and sells the Products, which are sold across the country in retailers like Target, Walmart, and Walgreens. Defendant also sells the Wipes online at retailers like Amazon.com.

32.     During any relevant time period, Defendant sold the Products with the front label Representations that led reasonable consumers to believe that the Products are 100% biodegradable.

33.     Defendant makes these Representations directly on the Products' front labeling in a bright-green font that contrasts the rest of the labels' blue color scheme:



34.     Additionally, since on or around March or April 2022, Defendant further misled consumers by claiming on the back of the Product package that the Wipes are "Made from 100% plant fibres, biodegrades in 4 weeks."

35.     Unfortunately for consumers, these Representations are false and misleading because the Products will not completely decompose within a reasonable period of time after

customary disposal. This is because the Products are customarily thrown in the trash, so they end up in landfills and/or incinerators. These places do not have the conditions necessary to allow the Products to decompose completely within a reasonable period of time.

36. Defendant intends for consumers to understand that the Products are biodegradable products, i.e., ones that are specially designed to completely break down and return to nature within a reasonably short period of time, after any customary disposal. In marketing the Products, Defendant made the Representations and has never advised consumers that the Products may not completely break down if disposed of in the trash. In other words, Defendant sells the Products as ones that are specially designed to break down and return to nature within a reasonably short period of time (i.e., 4 weeks) after any disposal, and not as a product intended to break down partially or only under certain specified circumstances or environments.

37. The deceptive nature of Defendant's unqualified biodegradable Representation has been addressed by the Federal Trade Commission ("FTC") in its Green Guides, which were created by the FTC to help companies avoid making misleading and deceptive claims. Specifically, under 16 C.F.R. § 260.8(c) of the Green Guides, the FTC states:

> It is deceptive to make an unqualified degradable claim for items entering the solid waste stream if the items do not completely decompose within one year after customary disposal. Unqualified degradable claims for items that are customarily disposed in landfills, incinerators, and recycling facilities are deceptive because these locations do not present conditions in which complete decomposition will occur within one year.

*Id*.

As such, the FTC requires companies to clearly and prominently qualify biodegradable claims "to avoid deception about: (1) the product's or package's ability to degrade in the environment where it is customarily disposed." 16 C.F.R. § 260.8(d).

38. Therefore, the Green Guides recognize that consumers understand that an unqualified biodegradable claim means that the product will biodegrade when disposed of in landfills.[9]

39. Section 260.3(b) of the Green Guides requires an environmental marketing claim to "specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service." 16 C.F.R. § 260.3(b). Defendant's "100% biodegradable" claim on the Products violates this standard of the Green Guides because it fails to specify whether it refers to wipes, the wipes' packaging, or just part of the wipes (i.e., the substrate).

## II. Unfortunately, For All Reasonable Consumers, Defendant's Products Will Not Completely Decompose Into Elements Found in Nature Within a Reasonably Short Period of Time After Customary Disposal

40. Defendant's Wipes are customarily disposed of in landfills and/or incinerators. In fact, Defendant's front labeling explicitly tells reasonable consumers not to dispose of the Products in the toilet.

41. Approximately 92 percent of total municipal solid waste in the United States is disposed of either in landfills, incinerators, or recycling facilities. Consumers do not customarily dispose of baby wipes in composting bins for treatment by a municipal composting facility. There are approximately 5,000 municipal composting facilities in the United States, so most consumers would not have access to such a facility. Even in the cities where municipal composting is available, a majority of those facilities are limited to the disposal of yard waste. Thus, for even the very small number of consumers who have access to municipal composting facilities, municipal ordinances forbid the disposal of human waste in such facilities.

---

[9] *See, e.g.* https://www.ftc.gov/system/files/documents/cases/140502americanplasticsdo.pdf (last accessed October 28, 2022) ("For unqualified biodegradability claims, any scientific technical protocol (or combination of protocols) substantiating such claims must assure complete decomposition within one year and replicate, i.e., simulate, the physical conditions found in landfills, where most trash is disposed.").

42. This fact is important because the conditions in industrial composting facilities are very different than those in landfills and/or incinerators. Composting facilities require the diligent management of temperature, oxygen/aeration, and carbon/nitrogen ratios,[10] which allow certain products to actually biodegrade within a reasonable time frame. This is in stark contrast to the conditions maintained in landfills and incinerators. In particular, waste in landfills is buried, rather than being exposed to air, light, or oxygen. Such conditions essentially mummify the waste and prevent it from biodegrading within a reasonable amount of time.

43. Any biodegradation in a landfill that does take place does so very slowly (over the span of decades). Thus, when disposed of in the trash, Water Wipes will not completely break down and return to nature (i.e., decompose into elements found in nature) within a reasonably short period of time because landfills do not present conditions necessary for biodegradation.

### III. Defendant's Knowledge, Representations, Omissions, and Concealment of Material Facts Deceived Plaintiff and Reasonable Consumers – This Conduct is Deceptive *and* Unfair under the ICFA

44. To drive up sales in the competitive wipes market and to expand its market share, Defendant knowingly omits the material fact that the Products will not completely break down and return to nature (i.e., decompose into elements found in nature) within a reasonably short period of time.

45. Thus, reasonable consumers shopping for "100% biodegradable" or green products, Products purchase Defendant's Products based on the above Representations and Omissions made by Defendant at the point of sale. But for Defendant's false and misleading labeling Representations and Omissions, these customers would not have purchased Defendant's Products or would not have paid as much as they did.

---

[10] https://bpiworld.org/BPI-Composting/.

46.     Defendant is a large, sophisticated company in manufacturing, distributing, and selling consumer goods, including wipe products, knew or should have known the Representations it made on the Products' front labeling were false.

47.     Defendant sold the Products containing the false and misleading Representations and Omissions during the relevant class period despite Defendant's knowledge that the Products were not 100% biodegradable.

48.     Nowhere on any of the Products' packaging did Defendant disclose that the Wipes would not completely break down and return to nature within a reasonably short period of time after customary disposal in a garbage can. In particular, the Products' packages do not include any disclosures as to (1) the type of non-customary disposal facility or method required for biodegradability, and/or (2) the availability of such disposal facility or method to consumers where the Products are marketed or sold.

49.     Defendant has engaged in deceptive, untrue, and misleading advertising by making the labeling Representations and Omissions discussed above.

50.     Defendant's conduct is also **<u>unfair</u>** for all of the reasons discussed above. Moreover, as an industry leader in the wipes market, Defendant should have done even basic testing on the Products to ensure that the Products were "100% Biodegradable" before placing the Products in the stream of commerce. However, Defendant clearly failed to adequately test its Products because the Representations and Omissions are untrue.

51.     Plaintiff and all reasonable consumers would not have purchased the Products or paid as much for them had they been truthfully and accurately labeled.

52.     Defendant's concealment was material and intentional because people are concerned with how the products they purchase affect the environment, especially when it comes

to waste. Consumers such as Plaintiff and Class members make purchasing decisions based on the Representations and Omissions made on the Products' labeling, including the "100% biodegradable" claims.

53.     Defendant knows that if it had not omitted that the Products will not completely break down and return to nature (i.e., decompose into elements found in nature) within a reasonably short period of time, then Plaintiff and class members would not have purchased the Products or would not have paid as much as they did.

**IV.  Injuries to Plaintiff and Class Members – and the Public at Large, Including Illinois Consumers**

54.     When Plaintiff purchased Defendant's Products, Plaintiff did not know and had no reason to know that Defendant's Products were not "100% Biodegradable."

55.     Consumers lack the ability to test or independently ascertain or verify whether a product is "100% Biodegradable", especially at the point of sale. Therefore, they must trust and rely on Defendant to truthfully and honestly report the true nature of the Products and their advertised attributes.

56.     Further, given Defendant's position as a leader in the wipes industry, Plaintiff and all reasonable consumers trusted and relied on Defendant's Representations and Omissions regarding the Products.

57.     Yet, when consumers look at the Products' packaging, they see in bright green letters on the front labeling of the Products that the Products are "100% Biodegradable Wipes." These words are surrounded by an image of a green leaf, which further deceives consumers into believing the Products are in fact, 100% biodegradable, or eco-friendly products that are better for the environment.

58.     No reasonable consumer, including Plaintiff and class members, would have paid as much for Defendant's Products containing the Representations and Omissions had they known the Products would not completely decompose within a reasonable time period after customary disposal and would instead end up in landfills or incinerators – making such omitted facts material to them.

59.     Defendant's false, misleading, and deceptive Representations and Omissions made on the labeling of the Products are likely to continue to deceive and mislead reasonable consumers and the public at large, as they have already deceived and misled Plaintiff and the Class Members.

60.     As a result of Defendant's Representations, Omissions, and deceptive conduct alleged herein, Plaintiff and Class members paid a price premium for the Products.

61.     Plaintiff and Class members are entitled to compensatory, statutory, and punitive damages, attorneys' fees and costs, and any further relief this Court deems just and proper.

## CLASS ALLEGATIONS

62.     Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

63.     Plaintiff seeks to represent a class defined as:

All persons who purchased the Products in the United States for personal or household use within any applicable limitations period ("**Nationwide Class**").

64.     Plaintiff also seeks to represent a subclass defined as:

All persons who purchased the Products in Illinois for personal or household use within any applicable limitations period ("**Illinois Subclass**").

65.     Plaintiff also seeks to represent a subclass defined as:

All persons who purchased the Products in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or

Washington for personal or household use within any applicable limitations period ("**Consumer Fraud Multi-State Subclass**").[11]

66.     Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers, and directors; (3) individuals who allege personal bodily injury resulting from the use of the Products; and (4) resellers of the Products.

67.     Plaintiff reserves the right to modify, change or expand the definitions of the Class based upon discovery and further investigation.

68.     *Numerosity*: The Class is so numerous that the joinder of all members is impracticable. The Class likely contains thousands of members based on publicly available data. The Class is ascertainable by records in Defendant's possession.

69.     *Commonality*: Questions of law or fact common to the Class include, without limitation:

     a.   Whether the Products are "100% Biodegradable";

     b.   Whether the Products biodegrade within 4 weeks;

     c.   Whether Defendant unfairly, unlawfully and/or deceptively failed to inform Plaintiff that the Products will not completely break down into elements found in nature within a reasonably short period of time after customary disposal in landfills;

---

[11] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

    d.   Whether a reasonable consumer would consider Defendant's Representations and/or Omissions alleged herein as material;

    e.   Whether Defendant knew or should have known that the Representations were false;

    f.   Whether Defendant's Representations are deceptive;

    g.   Whether Defendant's Representations and/or Omissions are false and misleading;

    h.   Whether Defendant engaged in **<u>unfair or</u>** deceptive trade practices;

    i.   Whether Defendant violated the state consumer protection statutes alleged herein;

    j.   Whether Defendant was unjustly enriched; and

    k.   Whether Plaintiff and Class members are entitled to damages and any other relief deemed appropriate.

70.    *Typicality*: Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members were injured and suffered damages in the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same legal theories.

71.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in prosecuting complex class actions, including actions with issues, claims, and defenses similar to the present case. Counsel intends to prosecute this action vigorously.

72.    *Predominance and superiority*: Questions of law or fact common to Class members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable, and the amount at issue for each Class member would not

justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with multiple lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff is unaware of any difficulties likely to be encountered in managing this action that would preclude its maintenance as a class action.

73.     Accordingly, this class action may be maintained under Fed. R. Civ. P. 23 (b)(3).

**CAUSES OF ACTION**

**COUNT I**
**VIOLATIONS OF STATE CONSUMER FRAUD ACTS**
**(On behalf of Plaintiff and the Consumer Fraud Multi-State Subclass)**

74.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75.     Plaintiff brings this Count on behalf of herself and the Consumer Fraud Multi-State Subclass against Defendant.

76.     The Consumer Fraud Acts of the States[12] in the Consumer Fraud Multi-State Subclass prohibit unfair or deceptive business practices in trade or commerce.

77.     Plaintiff and the other members of the Consumer Fraud Multi-State Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the

---

[12] The States include: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 Ill. Comp. Stat. 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, et seq.).

Consumer Fraud Multi-State Subclass because Plaintiff and members of the Consumer Fraud Multi-State Subclass have suffered an injury in fact and lost money (i.e. the price premium paid) as a result of Defendant's actions set forth herein.

78.     Defendant engaged in unfair and/or deceptive conduct by making material Representations and Omissions regarding the Products, as discussed herein.

79.     Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Subclass would rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

80.     Given Defendant's position in the consumer product wipes industry and its growing popularity as an established and trustworthy national brand, Plaintiff and reasonable consumers trusted and relied on Defendant's Representations and Omissions regarding the Products.

81.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and the other members of the Consumer Fraud Multi-State Subclass have sustained damages in an amount to be proven at trial.

82.     In addition, Defendant's conduct showed malice, motive, and reckless disregard for the truth, so an award of punitive damages is appropriate.

<u>**COUNT II**</u>
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")**
**(On behalf of Plaintiff and the Illinois Subclass)**

83.     Plaintiff re-alleges and incorporates all preceding factual allegations as set forth fully herein.

84.     Plaintiff brings this cause of action on behalf of herself and the Illinois Subclass members against Defendant.

85.     Plaintiff and other Illinois Subclass members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

86.     Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

87.     At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

88.     Plaintiff and the proposed Class members are "consumers" who purchased the Products for personal, family, or household use (and not for resale) within the meaning of the ICFA, 815 ILCS 505/1(e).

89.     The ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer of this State or the United States." 815 ILCS 505/10b(1).

90.     The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

91.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

92.     Plaintiff and the other Illinois Subclass Members saw and reasonably relied upon Defendant's Representations and Omissions alleged herein regarding the Products. Plaintiff read and relied on Defendant's labeling Representations and Omissions at the point of purchase to conclude that the Products would not completely decompose within a reasonable time period after customary disposal and would instead end up in landfills or incinerators

93.     Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

94.     Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

95.     Defendant advertised the Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

96.     Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

97.     Before placing the Products into the stream of commerce and into the hands of consumers, including Plaintiff and reasonable consumers, Defendant knew or should have known that the Products would not completely decompose within a reasonable time period after customary disposal and would instead end up in landfills or incinerators, but Defendant omitted, and concealed this material fact to consumers, including Plaintiff and Class members, by not including this information anywhere on the Products' labeling or advertising. Defendant chose to label the Products in this way to impact consumer choices and gain market share. Defendant is aware that all consumers who purchased the Products were exposed to and would be affected by its Representations and Omissions and would reasonably believe that the Products were 100% biodegradable and that Defendant's Representations were otherwise accurate. However, Defendant's Representations and Omissions are false and misleading because the Products would not completely decompose within a reasonable time period after customary disposal and would instead end up in landfills or incinerators.

98.     Defendant intended that Plaintiff and each of the other Illinois Subclass Members would reasonably rely upon the Representations, misleading characterizations, and material Omissions concerning the true nature of the Products.

99.     Defendant's Representations, concealment, Omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff and the other Illinois Subclass Members to be deceived about the true nature of the Products.

100.    Plaintiff and Class Members have been damaged as a proximate result of Defendant's violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing the Products.

101.    As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Subclass Members have suffered ascertainable losses of money caused by Defendant's Representations and material Omissions regarding the Products.

102.    Had they been aware of the true nature of the Products, Plaintiff and Class Members would have paid less or would not have purchased them.

103.    Based on Defendant's **unfair and/or** deceptive acts or practices, Plaintiff and the Illinois Subclass members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a.

## COUNT III
## UNJUST ENRICHMENT
**(On behalf of Plaintiff and the Nationwide Class and/or the Illinois Subclass and/or the Consumer Fraud Multi-State Subclass)**

104.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

105.    Plaintiff brings this Count on behalf of herself and the Nationwide Class and/or the Illinois Subclass and/or the Consumer Fraud Multi-State Subclass against Defendant.

106.    This claim is brought under the laws of the State of Illinois.

107.    Defendant's conduct violated, *inter alia*, state and/or federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Products while misrepresenting and omitting material facts, including by making the labeling Representations and Omissions alleged herein.

108.    Defendant's unlawful conduct allowed Defendant to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members and to Defendant's benefit and enrichment. Defendant has violated fundamental principles of justice, equity, and good conscience.

109.    Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

110.    Defendant knowingly received and enjoyed the benefits conferred by Plaintiff and Class members.

111.    It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class members' overpayments.

112.    Plaintiff and Class members seek to establish a constructive trust from which Plaintiff and Class members may seek restitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

a. Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class and Subclasses, and designating Plaintiff's counsel as Class Counsel;

b. Awarding Plaintiff and Class members compensatory, statutory, or other monetary damages, in an amount to be determined at trial;

c. Awarding Plaintiff and Class members appropriate relief, including but not limited to actual damages;

d. For restitution and disgorgement of profits;

e. Awarding Plaintiff and Class members reasonable attorneys' fees and costs as allowable by law;

f. Awarding pre-judgment and post-judgment interest;

g. For punitive damages; and

h. Granting any other relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: February 1, 2023                    Respectfully Submitted,

**LAUKAITIS LAW FIRM LLC**

*/s/ Kevin Laukaitis*
Kevin Laukaitis
737 Bainbridge Street #155
Philadelphia, PA 19147
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com

Andrew J. Sciolla*
**SCIOLLA LAW FIRM LLC**
Land Title Building
100 S. Broad Street, Suite 1910
Philadelphia, PA 19110

Phone: (267) 328-5245
Email: andrew@sciollalawfirm.com

*Pro Hac Vice Application Forthcoming*

**Attorneys for Plaintiff and the Proposed Classes**